# Exhibit A

IN THE SUPREME COURT
STATE OF NEW YORK          COUNTY OF COLUMBIA

———————————————————————————

AMERICAN BIO MEDICA CORPORATION,

        Plaintiff,

  -against-

TODD BAILEY, APRIL BAILEY,
PREMIER BIOTECH, INC., PREMIER BIOTECH LABS, LLC., and
PECKHAM VOCATIONAL INDUSTRIES, INC.,

        Defendants.

———————————————————————————

**SUMMONS**

Index No.:  **11196-17**

TO THE ABOVE NAMED DEFENDANTS:

    YOU ARE HEREBY SUMMONED and required to serve upon Plaintiff's attorney an
Answer to the Complaint in this action within twenty (20) days after the service of this Summons,
exclusive of the day of service, or within thirty (30) days after service is complete if this Summons is
not personally delivered to you within the State of New York. In case of your failure to answer,
judgment will be taken against you by default for the relief demanded in the Complaint.

    Columbia County is designated as the place of trial. The basis of the venue designated is the
Plaintiff's principal place of business, and the situs of the property that is the subject of this
litigation.

Dated:  February 27, 2017

                    WILLIAM J. BETTER, P.C.

                    William J. Better, Esq.
                    *Attorneys for Plaintiff*
                    1 Albany Avenue
                    Kinderhook, New York 12106
                    Tel: (518) 758-1511

IN THE SUPREME COURT
STATE OF NEW YORK        COUNTY OF COLUMBIA

AMERICAN BIO MEDICA CORPORATION,

                    Plaintiff,

                                        **VERIFIED COMPLAINT**

    -against-                           Index No.:  **11196-17**

TODD BAILEY, APRIL BAILEY,
PREMIER BIOTECH, INC., PREMIER BIOTECH LABS, LLC., and
PECKHAM VOCATIONAL INDUSTRIES, INC.,

                    Defendants.

---

Plaintiff, AMERICAN BIO MEDICA CORPORATION, by and through its attorney, as and for a Verified Complaint, state the following:

1. At all times herein mentioned, Plaintiff AMERICAN BIO MEDICA CORPORATION

   (hereinafter "ABMC") is and was a Domestic Business Corporation with a principal place of

   business situate in the Town of Stuyvesant, County of Columbia, State of New York, more

   particularly known as 122 Smith Road, in the Town of Stuyvesant, County of Columbia,

   State of New York.

2. At all times herein mentioned, ABMC was and is engaged in the business of developing,

   manufacturing, and marketing accurate, cost-effective immunoassay test kits and point of

   collection tests for drugs of abuse (hereinafter "drug testing kits").

3. Upon information and belief, Defendant Todd Bailey (hereinafter "Bailey") is a natural person whose address is in the City of Shorewood, in the County of Hennepin, State of Minnesota, more particularly known as 28115 Boulder Bridge Drive, Shorewood, Minnesota 55331.

4. Upon information and belief, Defendant April Bailey is a natural person whose address is in the City of Shorewood, in the County of Hennepin, State of Minnesota, more particularly known as 28115 Boulder Bridge Drive, Shorewood, Minnesota 55331. Defendant April Bailey is the Spouse of Defendant Bailey.

5. Upon information and belief, Defendant Premier Biotech, Inc., (hereinafter "Premier") is a Domestic Business Corporation with a Principal Executive Office situate in the City of Chanhassen, Counties of Carver and Hennepin, State of Minnesota, more particularly known as 6630 Lakeway Drive, Chanhassen, Minnesota 55317. Defendant Bailey is the president of Premier and a shareholder thereof, and Defendant April Bailey is Premier's Chief Executive Officer. Since its inception, Premier has been in the business of providing products and

services not dissimilar from those provided by the Plaintiff. See <u>Exhibit B</u>.

6.  Upon information and belief, Defendant Premier Biotech Labs, LLC., (hereinafter "Premier

    Labs") is a Domestic Limited Liability Company with a Principal Executive Office situate in

    the City of Cottage Grove, County of Washington, State of Minnesota, more particularly

    known as 7516 80th Street S, Suite 220, Cottage Grove, Minnesota 55016. Defendant Bailey

    is the manager of Premier Labs. Since its inception, Premier Labs has been in the business of

    providing products and services not dissimilar from those provided by the Plaintiff. See

    <u>Exhibit C</u>.

7.  Upon information and belief, Defendant Peckham Vocational Industries, Inc., (hereinafter

    "Peckham") is a Domestic Nonprofit Corporation with a principal place of business situate

    in the Town of Lansing, County of Mower, State of Michigan, more particularly known as

    3510 Capital City Boulevard, Lansing, Michigan 48906.

## INTRODUCTION

8.  Beginning in or about April of 2001 and ending on or about December 23, 2016, Defendant

Bailey was an employee and/or consultant of the Plaintiff. Defendant Bailey served the Plaintiff in various capacities, including but not limited to Vice President of Sales and Marketing. A copy of Defendant Bailey's Employee Compliance Certification—a signed, written agreement delineating, among other things Defendant Bailey's duties and obligations to the Plaintiff—is attached hereto as Exhibit A.

9. Defendant Bailey's position with the Plaintiff was a senior management position, in which he earned in excess of $200,000.00 per year, and in which he had significant contact with the Plaintiff's customers and sales staff—both in-house and otherwise—and had access to proprietary and confidential information regarding the Plaintiff's contracts, pricing, product costs, internal sales strategies, legal and regulatory procedures, and competitive positions within the Plaintiff's industry.

10. Defendant Bailey represented the Plaintiff in business matters throughout the United States and Europe and regularly attended trade shows on behalf of the Plaintiff and at the Plaintiff's expense.

11. The Plaintiff has a contractual relationship with the Department of Corrections of the State of Michigan (hereinafter "DOC"), wherein the Plaintiff has supplied DOC with drug testing kits for a period of longer than fourteen (14) years. The Plaintiff's contract with DOC routinely generated between $800,000.00 and $1,000,000.00 in gross yearly revenue for the Plaintiff.

12. Defendant Bailey, while employed with and consulting for the Plaintiff, was responsible for managing the Plaintiff's contract with DOC.

13. In 2012, the Plaintiff was informed by DOC that, according to state regulations, DOC would be required to publicly request proposals for future contracts, rather than simply renewing its contract with the Plaintiff. Such a Request for Proposals would not be necessary, however, if the Plaintiff supplied its products through a Community Resource Organization (hereinafter "CRO"), provided that such CRO was proved to be a worthy supplier, meeting the standards required by the State of Michigan.

14. Beginning in 2012, the Plaintiff developed a business relationship with Defendant Peckham,

a CRO in the State of Michigan, with the intention that Defendant Peckham would package

products supplied by the Plaintiff and then distribute them to DOC.

15. Defendant Bailey, as the individual responsible for managing the Plaintiff's contract with

DOC, also served as the Plaintiff's primary contact with Defendant Peckham.

16. Over a period of approximately five (5) years, the Plaintiff expended significant funds,

resources, and energy to ensure that Defendant Peckham was suitably prepared to package

the Plaintiff's products and distribute them to DOC, and through the Plaintiff's

expenditures, Defendant Peckham was eventually proved to be a worthy supplier, meeting

the standards required by the State of Michigan. The Plaintiff's contract with DOC was

extended by exception throughout this period.

17. In 2016, the Plaintiff was informed that, rather than contracting with Defendant Peckham,

which would in turn supply the Plaintiff's products, DOC would instead be requesting

proposals from CROs to supply drug testing kits to DOC.

18. On December 23, 2016, the Plaintiff terminated its consulting relationship with Defendant

Bailey and transferred management of the DOC contract to in-house staff.

19. In January of 2017, in anticipation of the approaching Request for Proposal from DOC, the

Plaintiff contacted Defendant Peckham so that Defendant Peckham could work with the

Plaintiff in preparing a proposal to DOC. At no point during multiple conversations with

Defendant Peckham during January of 2017 did Defendant Peckham indicate to the Plaintiff

that Peckham did not intend to continue its business relationship with the Plaintiff.

20. The anticipated Request for Proposals was issued by DOC on February 3, 2017, requiring

responses by March 3, 2017.

21. On February 10, 2017, Defendant Peckham informed the Plaintiff that in its response to

DOC's Request for Proposals, it would propose to package and distribute products supplied

by Defendants Premier and Premier Labs, rather than by the Plaintiff.

22. Because Defendant Peckham informed the Plaintiff of its intentions so near to the response

deadline, the Plaintiff will be unable to source another proven CRO to package and

distribute its products to DOC before responses are due.

23. Although the Plaintiff may still submit a proposal to DOC in its own right, the absence of a

proven CRO acting as the distributor to DOC places any proposal from the Plaintiff at a

competitive disadvantage.

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT BAILEY**

24. The Plaintiff repeats, restates, and realleges each and every allegation set forth in the

paragraphs numbered "1" through "23" as if more fully set forth herein.

25. The first section of Defendant Bailey's Employee Compliance Certification states that

Defendant may not use any confidential or proprietary information he acquires in the course

of his employment with the Plaintiff for any purpose other than to perform his duties as an

employee of the Plaintiff.

26. The first section of Defendant Bailey's Employee Compliance Certification states that

proprietary information includes (among other information) business plans and strategies,

financial information and forecasts, marketing strategies and information, information

regarding customers and their specialized requirements, and information regarding customer

contracts.

27. Defendant Bailey used confidential information acquired during his employment with the

Plaintiff—in particular, information regarding the specialized requirements of the Plaintiff's

relationship with DOC, such as the need for the involvement of a CRO, Defendant

Peckham's availability and experience in performing that specialized service, and Defendant

Peckham's financial arrangements with the Plaintiff—to advance the interests of Defendants

Premier and Premier Labs.

28. Defendant Bailey's use of the Plaintiff's proprietary information for such purpose—a

purpose other than performance of his duties for the Plaintiff—represents a breach of of his

Employee Compliance Certification.

29. Because Defendant Bailey has breached his Employee Compliance Certification, the Plaintiff

stands at risk of losing one of its largest customers, to which a significant portion of the

Plaintiff's overall revenue has been attributable for a period of approximately fourteen (14)

years.

30. Given the significance of the contract, the loss of DOC as a customer would represent an irreparable harm to the Plaintiff.

31. The Plaintiff is entitled to have its proprietary information protected from Defendant Bailey's use in breach of the Employee Compliance Certification.

32. To prevent irreparable harm as a result of the breach by Defendant Bailey, the Plaintiff is entitled to a permanent injunction, as well as a preliminary injunction and temporary restraining order pending the outcome of a hearing before the court.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT BAILEY

33. The Plaintiff repeats, restates, and realleges each and every allegation set forth in the paragraphs numbered "1" through "32" as if more fully set forth herein.

34. The second section of Defendant Bailey's Employee Compliance Certification states that Defendant Bailey may not directly or indirectly solicit suppliers, customers, employees, distributors, sub-distributors or consultants of the Plaintiff for Defendant Bailey's own benefit or the benefit of another party for a period of one (1) year following the end of his

employment.

35. Defendant Bailey's affiliation with the Plaintiff was terminated on December 23, 2016.

36. On February 10, 2017, the Defendant Peckham informed the Plaintiff that its proposal to

    DOC would call for the packaging and distribution of products supplied by Defendants

    Premier and Premier Labs, rather than products supplied by the Plaintiff.

37. Defendant Bailey used his business relationship with Defendant Peckham, which he had

    developed in the course of his employment with the Plaintiff, to persuade Defendant

    Peckham to use the products of Defendants Premier and Premier Labs, rather than those of

    the Plaintiff, in the context of Defendant Peckham's proposal to DOC.

38. Defendant Bailey's conduct constitutes solicitation of a customer (DOC) and of a distributor

    (Defendant Peckham) within one (1) year of the end of his employment with the Plaintiff,

    placing Defendant Bailey in breach of his Employee Compliance Certification.

39. Because Defendant Bailey has breached his Employee Compliance Certification, the Plaintiff

    stands at risk of losing one of its largest customers, to which a significant portion of the

Plaintiff's overall revenue has been attributable for a period of approximately fourteen (14)

years.

40. Given the significance of the contract, the loss of DOC as a customer would represent an

irreparable harm to the Plaintiff.

41. The Plaintiff is entitled to have its customer relationships with DOC and other clients—as

well as its distribution relationship with Defendant Peckham—protected from solicitation by

Defendant Bailey in breach of the Employee Compliance Certification.

42. To prevent irreparable harm as a result of the breach by Defendant Bailey, the Plaintiff is

entitled to a permanent injunction, as well as a preliminary injunction and temporary

restraining order pending the outcome of a hearing before the court.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANT BAILEY

43. Plaintiff repeats, restates, and realleges each and every allegation set forth in the paragraphs

numbered "1" through "42" as if more fully set forth herein.

44. During the course of his employment with the Plaintiff, Defendant Bailey had access to

proprietary and confidential information regarding the Plaintiff's contracts, pricing, product

costs, internal sales strategies, legal and regulatory procedures, and competitive positions

within the Plaintiff's industry.

45. Such information, gathered through significant time, effort, and cost, permits the Plaintiff to

gain an advantage over competitors within the Plaintiff's industry who do not have access to

the same.

46. Defendant Bailey used such information, in particular the status of the Plaintiff's contract

with DOC, the involvement of Defendant Peckham in the continuance of that contract, and

the Plaintiff's internal costs and profit margins with regard to that contract, to advance the

interests of Defendants Premier and Premier Labs in competing with the Plaintiff to secure

the DOC contract.

47. In so using the Plaintiff's proprietary and confidential information, Defendant Bailey

misappropriated the Plaintiff's trade secrets.

48. Because Defendant Bailey has misappropriated the Plaintiff's trade secrets, the Plaintiff

stands at risk of losing one of its largest customers, to which a significant portion of the

Plaintiff's overall revenue has been attributable for a period of approximately fourteen (14)

years.

49. Given the significance of the contract, the loss of DOC as a customer would represent an

irreparable harm to the Plaintiff.

50. The Plaintiff is entitled to have its trade secrets protected from misappropriation by

Defendant Bailey.

51. To prevent irreparable harm as a result of the misappropriation by Defendant Bailey, the

Plaintiff is entitled to injunctive relief.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS APRIL BAILEY, PREMIER, AND PREMIER LABS

52. Plaintiff repeats, restates, and realleges each and every allegation set forth in the paragraphs

numbered "1" through "51" as if more fully set forth herein.

53. The Plaintiff had an agreement with Defendant Peckham to cooperate in submitting a

proposal to supply DOC with drug testing kits.

54. Upon information and belief, Defendants April Bailey, Premier, and Premier Labs were aware of the agreement between the Plaintiff and Defendant Peckham.

55. Upon information and belief, Defendants April Bailey, Premier, and Premier Labs have persuaded or otherwise incentivized Defendant Peckham to submit a proposal to supply DOC with drug testing kits in cooperation with Premier and Premier Labs, rather than with the Plaintiff.

56. In so persuading or incentivizing Defendant Peckham, Defendants April Bailey, Premier, and Premier Labs caused Defendant Peckham to breach its agreement with the Plaintiff.

57. In so acting, Defendants April Bailey, Premier, and Premier Labs have tortiously interfered with a contract.

58. As a result of the Defendants' interference, the Plaintiff has been damaged in an amount yet to be determined.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS APRIL BAILEY, PREMIER, AND PREMIER LABS, AND AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT PECKHAM

59. Plaintiff repeats, restates, and realleges each and every allegation set forth in the paragraphs

numbered "1" through "58" as if more fully set forth herein.

60. Defendants April Bailey, Premier, Premier Labs, and Peckham all stand to gain significant profits and revenues as a result of their cooperation in submitting a proposal for a contract to supply drug testing kits to DOC.

61. Such contract, should it be obtained, will capitalize upon significant investments of time, effort, and costs made by the Plaintiff, over a period of years, to ensure that Defendant Peckham was suitably prepared to package and distribute the products subject to the contract with DOC, which investments eventually resulted in Defendant Peckham proving to be a worthy supplier, meeting the standards required by the State of Michigan.

62. Equity and good conscience dictate that Defendants April Bailey, Premier, Premier Labs, and Peckham should not be permitted to retain such gains as have been realized at the Plaintiff's expense.

63. As such, Defendants April Bailey, Premier, Premier Labs, and Peckham have been unjustly enriched, and such gains as are realized by them should rightfully be remitted to the Plaintiff.

**WHEREFORE,** Plaintiff American Bio Medica Corporation humbly prays this Honorable Court grand judgement as follows:

a.  In favor of Plaintiff American Bio Medica Corporation for a preliminary injunction against Defendant Todd Bailey for the first, second, and third causes of action.

b.  In favor of Plaintiff American Bio Medica Corporation for a permanent injunction against Defendant Todd Bailey for the first, second, and third causes of action.

c.  In favor of Plaintiff American Bio Medica Corporation for a Temporary Restraining Order against Defendant Todd Bailey for the first, second, and third causes of action.

d.  In favor of Plaintiff American Bio Medica Corporation for damages against Defendants April Bailey, Premier Biotech, Inc., and Premier Bio Labs, LLC for the fourth cause of action.

e.  In favor of Plaintiff American Bio Medica Corporation for damages against Defendants April Bailey, Premier Biotech, Inc., Premier Bio Labs, LLC, and Peckham Vocational Industries, Inc. for the fifth cause of action.

f.  For all such other and further relief as to this Honorable Court shall deem just, proper, and equitable.

Signed, this _____ day of February, 2017
Kinderhook, New York

WILLIAM J. BETTER, P.C.

William J. Better, Esq.
*Attorneys for Plaintiff*
1 Albany Avenue
Kinderhook, New York 12106
(518) 758-1511

STATE OF NEW YORK )
) ss.:
COUNTY OF COLUMBIA )

MELISSA WATERHOUSE, being duly sworn, deposes and says that deponent is the Chief Executive Officer of AMERICAN BIO MEDICA CORPORATION, the corporation named in the within action, that deponent has read the foregoing Summons and Verified Complaint and knows the contents thereof; and that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters deponent believes it to be true.

This verification is made by deponent because AMERICAN BIO MEDICA CORPORATION is a domestic business corporation. Deponent is an officer thereof, to wit, its Chief Executive Officer. The grounds of deponent's belief as to all matters not stated upon deponent's knowledge are as follows: documents and records of the corporation.

Melissa Waterhouse
Chief Executive Officer

Sworn to before me this
24th day of February, 2017

Notary Public
DEBORAH A. BERLIN
Notary Public, State of New York
No. 01BE6036756
Qualified in Columbia County
Commission Expires February 7, 2018

## ATTORNEY CERTIFICATION

I, William J. Better., HEREBY CERTIFY, under penalty of perjury, that I have no actual knowledge that the substance of any statements of fact contained in the annexed documents are false. This Certification is based solely and exclusively upon information provided by the client, and upon the client's certification to the undersigned attorney that such information is not false, and is not based upon any review, audit, examination, inquiry, or investigation made by the undersigned attorney or by anyone acting on behalf of said attorney.

(A)     PLEASE TAKE NOTICE THAT this Certification is made by the attorney as an Officer of the Court and is directed solely and exclusively to the Court in accordance with 22 NYCRR 202.16(3) and is expressly not directed or extended to the opposing party herein.

(B)     PLEASE TAKE FURTHER NOTICE that the opposing party may not and should not rely upon this Attorney Certification in assessing the truth or validity of the information contained in the annexed document. The credibility contained in this submission is no greater than the credibility of the client represented by the undersigned attorney and the opposing party should give this document no greater credence merely because it bears this Attorney Certification.

SIGNED, this _____ Day of February, 2017

William J. Better, Esq.

EXHIBIT A



## EMPLOYEE COMPLIANCE CERTIFICATION

In consideration of, and as a condition of my employment with AMERICAN BIO MEDICA CORPORATION, hereinafter "ABMC", I hereby represent to, and agree with, ABMC as follows:

1.    Proprietary Information; Confidentiality. I understand that my employment by ABMC creates a relationship of confidence and trust with respect to any information of confidential or secret nature that may be disclosed to me by ABMC that relates to the business or products of ABMC or any of its parents, subsidiaries, affiliates, customers or suppliers, or any other party whom ABMC agrees to hold information of such party in confidence ("Information"). I understand that the Information has independent economic value to ABMC and I acknowledge that ABMC has taken steps to preserve and safeguard the secrecy of the Information and the Information is not generally known to the public or to others in ABMC's industry, and has entailed the expenditure of substantial costs and effort on ABMC's behalf over a long period of time.

As an Employee I shall make all reasonable efforts to maintain the Information as confidential and secret information of ABMC. I hereby agree that I will only disclose the Information to: ABMC, its employees, or agents whom it shall be reasonably necessary to disclose the Information in order to further conduct the business of ABMC, to my legal counsel in connection with such counsel's representation, or as otherwise may be required by law.

I agree that all right, title and interest in and to the Information shall remain the exclusive property of ABMC and that I will not be granted any interest or license of any right respecting the Information other than that may be expressly set forth herein. I agree that any ideas, processes, designs, procedures, or methods related to ABMC's business, manufacturing, operating systems or product technology, developed by me while an employee of ABMC is considered "works for hire" and such "works for hire" shall become and remain the sole property of ABMC. I further agree that I will not file any application for intellectual property rights related to the Information or "works for hire" without the express written consent of ABMC. I will not use the Information for any purpose other than to perform my duties as an Employee of ABMC.

Such Proprietary Information shall include but is not limited to: ABMC's internal operating systems and procedures, ABMC's current and future business plans and strategies, (including but not limited to analytical methods and procedures, financial information, forecasts and forecast assumptions), marketing strategies or information, knowledge concerning ABMC's customers and their specialized requirements (including but not limited to any customer lists or databases pertaining to existing customers, information related to past or prospective customers, data about the terms, conditions and expiration dates of existing relationships or contracts with customers, the type, quality and specifications of products purchased by such customers), any technical data; new or existing product or service concepts or ideas, know-how (trade secrets), any and all information related to ABMC's research and development activities, manufacturing, products, inventions, formulas, processes, designs, drawings and service and operation manuals and documentation.

/

Proprietary Information shall mean all notes, memoranda, files, records, writing or other documents which Employee has, in the past, or shall after the full execution of this Agreement, prepare, use or come into contact with during his/her employment with ABMC, which relate to any of the above or are useful in any manner to the business of ABMC. Proprietary Information shall also include any and all information and materials in ABMC's possession or under ABMC's control for any other person or entity which ABMC is obligated to treat as confidential or proprietary, and any and all information not generally known to the public or within industries or trades in which ABMC competes. The definition of Proprietary Information applies, to all communications, including written, electronic and oral, and without regard, to whether any specific matters would be deemed confidential, material or important or whether any specific matters would be deemed, patentable or copyrightable.

The obligations noted above shall not apply to: Information that immediately prior to or at the time of disclosure is, or thereafter becomes, available to the general public, Information that has been lawfully obtained by me from an independent third party without breach of the obligations noted above as shown by sufficient documentation that establishes the third party as the source of the Information and that the third party has not obtained the Information from ABMC, or Information that I can establish, by documented and competent evidence, was in my possession prior to my employment with ABMC.

My obligations related to the Information shall remain in effect until such time that the Information is no longer confidential or secret and is known to the general public, and my obligations related to the Information survives any termination or resignation of my employment with ABMC.

I understand that in the case of a breach or threatened breach of my obligations under this Section 1 by me, ABMC may suffer irreparable harm and will therefore be entitled to seek and be granted injunctive relief to enforce my obligations under this Section 1.

2.     Non-solicitation. During and for a period of one (1) year after my termination or resignation from employment with ABMC, I will not directly or indirectly solicit suppliers, customers, employees, distributors, sub-distributors or consultants of ABMC for my benefit or for the benefit of any other party.

3.     Employee Handbook. The ABMC Employee Handbook (the "Handbook") describes important information about ABMC and my relationship with ABMC as my Employer that is not included specifically in this Certification. I hereby acknowledge that I have received the Handbook and I am aware that it is my responsibility to read it thoroughly and comply with the policies contained in the Handbook. I understand that the policies, benefits and information contained in the Handbook are subject to change and that revisions to the Handbook may be made. Any such changes will be communicated through official notices and I acknowledge that any such revisions may supercede, modify or eliminate existing policies. Only the Chief Executive Officer, Chief Financial Officer or a majority of the Board of Directors has the ability to adopt any revisions to the policies contained in the Handbook and any revisions made to it.

4.     Employment Status. I have entered into my employment relationship with ABMC voluntarily and acknowledge that there is no specified length of employment. Accordingly, either ABMC or I can terminate the relationship at will, with or without cause, at any time, so long as there are no violations of applicable federal or state law.

2

Furthermore, neither my signature on this Certification, nor the Employee Handbook constitutes a contract of employment with ABMC or obligates ABMC to employ me for any stated period of time.

5. Governing Law; Severability. This Certification shall be governed and interpreted in accordance with the laws of the State of New York, without regard to the application or principles of choice of law. In the event that any provision of this Certification is found by a court, arbitrator or other tribunal to be illegal, invalid or unenforceable, then such provision will not be voided, but will enforced to the maximum extent permissible under applicable law, and the remainder of this Certification will remain in full force and in effect.

6. Contacts. Should I have any questions or concerns related to this Certification or its contents, I shall contact the following persons at ABMC's Corporate Office in Kinderhook, NY:

For Sections 1, 2, & 5:

Melissa A. Decker
Corporate Secretary
Corporate Compliance Administrator
Phone: 800-227-1243, Extension 107
Email: mdecker@abmc.com

For Sections 3 & 4:

Therese R. Drobner
Human Resources
Phone: 800-227-1243, Extension 103
Email: tdrobner@abmc.com

By signing and dating below, I hereby agree to comply with the terms of this Certification:

**AMERICAN BIO MEDICA CORPORATION:**

Keith E. Palmer
Print Name

_(signature)_
Sign here

10/1/04
Date

**EMPLOYEE:**

Todd Bailey
Print Name

_(signature)_
Sign here

7/20/04
Date

3

**EXHIBIT B**

## Business Record Details »

Minnesota Business Name
# Premier Biotech Labs, LLC

Business Type
  Limited Liability Company (Domestic)

MN Statute
  322B

File Number
  679661900021

Home Jurisdiction
  Minnesota

Filing Date
  6/29/2013

Status
  Active / In Good Standing

Renewal Due Date
  12/31/2016

Registered Office Address
  6630 Lakeway Drive
  Chanhassen, MN 55317
  USA

Registered Agent(s)
  (Optional) None provided

Manager
  Todd Bailey
  7516 80th St S Suite 220
  Cottage Grove, MN 55016
  USA

Principal Executive Office Address
  7516 80th St S Suite 220
  Cottage Grove, MN 55016
  USA

Filing History

# Filing History

Select the item(s) you would like to order:   Order Selected Copies

| Filing Date | Filing | Effective Date |
|---|---|---|
| 6/29/2013 | Original Filing - Limited Liability Company (Domestic) (Business Name: Premier Biotech Labs, LLC) | |

EXHIBIT C

## Business Record Details »

Minnesota Business Name
# PREMIER BIOTECH, INC

| | |
|---|---|
| **Business Type** | **MN Statute** |
| Business Corporation (Domestic) | 302A |
| | |
| **File Number** | **Home Jurisdiction** |
| 3493807-2 | Minnesota |
| | |
| **Filing Date** | **Status** |
| 09/14/2009 | Active / In Good Standing |
| | |
| **Renewal Due Date** | **Registered Office Address** |
| 12/31/2017 | 6630 Lakeway Drv |
| | Chanhassen, MN 55317 |
| | USA |
| | |
| **Number of Shares** | **Registered Agent(s)** |
| 10,000 | (Optional) None provided |
| | |
| **Chief Executive Officer** | **Principal Executive Office Address** |
| April Bailey | 6630 Lakeway Drv |
| 6630 Lakeway Drv | Chanhassen, MN 55317 |
| Chanhassen, MN 55317 | USA |
| USA | |

Filing History

# Filing History

Select the item(s) you would like to order:   Order Selected Copies

| Filing Date | Filing | Effective Date |
|---|---|---|
| 09/14/2009 | Original Filing - Business Corporation (Domestic) (Business Name: PREMIER BIOTECH, INC) | |
| 2/25/2013 | Administrative Dissolution - Business Corporation (Domestic) | |

*IN THE SUPREME COURT*
STATE OF NEW YORK    COUNTY OF COLUMBIA

---

AMERICAN BIO MEDICA CORPORATION,

                                    Plaintiff,

    -against-

TODD BAILEY, APRIL BAILEY,
PREMIER BIOTECH, INC., PREMIER BIOTECH LABS, LLC., and
PECKHAM VOCATIONAL INDUSTRIES, INC.,

                                    Defendants.

---

RECEIVED
FEB 2 7 2017
COLUMBIA COUNTY SUPREME
COUNTY AND FAMILY COURTS

RECEIVED
FEB 2 7 2017
CHAMBERS OF J. NICHOLS, JUDGE

RECEIVED
FEB 2 8 2017
CHAMBERS OF
HON. RICHARD MOTT

ORDER TO
SHOW CAUSE

Index No. 1196-17

Upon reading and filing the Summons and Verified Complaint, and upon the appended Affidavit of Melissa Waterhouse, Chief Executive Officer of the Plaintiff herein, duly sworn to on February 24, 2017, and upon the appended Affirmation of William J. Better, Esq., duly affirmed on February 27, 2017, and upon all exhibits appended thereto, and upon all papers, pleadings, and proceedings previously submitted or heard, and upon Good Cause having been shown for the relief hereinafter requested,

Let the defendant TODD BAILEY Show Cause at a term of this Honorable Court held in and for the County of Columbia, at the Courthouse Thereof, at 401 Union Street, in the City of Hudson, County of Columbia, State of New York on March 20, 2017, at _____, or as soon thereafter as Counsel may be heard, for an Order:

I.    Pursuant to SECTION 6311 of the CIVIL PRACTICE LAW AND RULES OF THE STATE OF NEW YORK issuing a Preliminary Injunction against defendant TODD BAILEY, individually, and as Director, Officer, Consultant, Employee, Shareholder, and/or Executive of Premier Biotech, Inc., and/or Premier Labs, LLC, prohibiting and barring him (1) from responding to a Request for Proposal issued by the Michigan Department of Corrections on February 3, 2017, (2) from participating in, informing, or agreeing to provide goods or services with regard to any entity's response to the same, (3) from in any manner soliciting the business or services of customers, employees, distributors, sub-distributors, or consultants of the plaintiff corporation during the term provided in the Employee Compliance Certification signed by defendant Todd Bailey on September 20, 2004, and (4) from in any manner exploiting, disseminating, or appropriating confidential or proprietary information, including trade secrets, learned during defendant Todd Bailey's employment with the plaintiff corporation; and Good Cause being shown, be it further

ORDERED that, pursuant to SECTION 6301 of the CIVIL PRACTICE LAW AND

RULES OF THE STATE OF NEW YORK a Temporary Restraining Order shall be issued prohibiting and barring defendant TODD BAILEY, individually, and as Director, Officer, Shareholder, and/or Executive of Premier Biotech, Inc., and/or Premier Labs, LLC, (1) from responding to a Request for Proposal issued by the Michigan Department of Corrections on February 3, 2017, (2) from participating in or informing any entity's response to the same, (3) from in any manner soliciting the business or services of customers, employees, distributors, sub-distributors, or consultants of the plaintiff corporation during the term provided in the Employee Compliance Certification signed by defendant Todd Bailey on September 20, 2004, and (4) from in any manner exploiting, disseminating, or appropriating confidential or proprietary information, including trade secrets, learned during defendant Todd Bailey's employment with the plaintiff corporation;

And Good Cause having been further shown, be it ORDERED that Service of this Order to Show Cause, and the papers upon which it was granted, including the Summons and Verified Complaint, the Affidavit of Melissa Waterhouse, and the Affirmation of William J. Better, Esq. on or before _March 6_____, 2017 upon defendant TODD BAILEY, individually, and as Director, Officer, Shareholder, and/or Executive of Premier Biotech, Inc. and/or Premier Labs, LLC by _express mail 2-day service, upon each_ _____ be deemed good and sufficient service.

Answering papers, if any or aught are to be had, are to be served upon William J. Better, P.C., attorney for AMERICAN BIO MEDICA CORPORATION, the Plaintiff herein, not later than the _16th_ day of the month of _March_____, 2017, at ____:____ in the _____ noon thereof.

Signed, this _28th_ day of _February_, 2017

PERSONAL APPEARANCES ARE NOT REQUIRED ON
THE RETURN DATE. ALL ORIGINAL PAPERS MUST
BE FILED IN THE COURT CLERK'S OFFICE IN
ACCORDANCE WITH LOCAL RULE 6.0

HON. RICHARD MOTT
JUSTICE OF THE SUPREME COURT

IN THE SUPREME COURT
STATE OF NEW YORK                                  COUNTY OF COLUMBIA

---

AMERICAN BIO MEDICA CORPORATION,

                      Plaintiff,

                                          **AFFIDAVIT OF**
                                          **MELISSA A. WATERHOUSE**
        -against-                         Index Number:

TODD BAILEY, APRIL BAILEY,
PREMIER BIOTECH, INC., PREMIER BIOTECH LABS, LLC., and
PECKHAM VOCATIONAL INDUSTRIES, INC.,

                      Defendants.

---

STATE OF NEW YORK      )
                       )ss.:
COUNTY OF COLUMBIA     )

Melissa A. Waterhouse, being duly sworn deposes and says:

1. I am the Chief Executive Officer of American Bio Medica Corporation (hereinafter

    "ABMC"), which is a publicly traded corporation with its corporate office located in

    Kinderhook, New York.

2. ABMC seeks a temporary restraining order pending a hearing on a preliminary injunction

    in the above referenced case, which seeks a permanent injunction against Todd Bailey

    (hereinafter "Bailey") and all other entities, which have been provided confidential

    information by Bailey about ABMC and ABMC's relationships with its customers.

3. ABMC has been in existence since 1986 and since 1992, is in the business of developing, manufacturing, and marketing accurate, cost effective immunoassay test kits, including some of the world's most effective point-of-collection tests for drugs of abuse.

4. ABMC currently holds 12 patents issued by the United States Patent and Trademark Office as well as a number of patents issued in various countries outside the United States. ABMC also has twenty-nine (29) 510(k) marketing clearances from the United States Food and Drug Administration for products.

5. ABMC employs approximately 41 people at its Kinderhook, New York location and another 16 at its bulk strip manufacturing facility in Logan Township, New Jersey.

6. Defendant Bailey, began working for ABMC in April 2001 as a Director of Business Development. His responsibilities included all manners of sales and all manners of communications with different entities, including many corrections agencies and departments for states and counties throughout the United States.

7. In January 2004, Bailey was promoted to Vice President of Sales & Marketing, and he served in that capacity as an employee of ABMC until September 2011.

8. In September 2004, Bailey entered into an agreement with ABMC related to the information that had independent economic value to ABMC, a copy of which is appended hereto as Exhibit A.

9. In September 2011, Bailey entered into a 1099 consulting relationship with ABMC. He served in that capacity until December 2016. As a 1099 consultant, the level of information he received related to ABMC and its business did not change. Rather, he received the same high level of confidential and proprietary information.

10. Throughout the entire relationship, Bailey continuously reported directly to the Chief Executive Officer of ABMC. He also reported to members of the Board of Directors of ABMC. He was privy to all types of information that is confidential and proprietary and that information includes, but is not necessarily limited to, information related to: customer lists and databases; sales and marketing plans and strategies; customer pricing structures, costing of ABMC (internal gross profit margin calculations), daily sales reports/profit margin/open orders reports (regarding all products of ABMC), material and non-public customer contracts (including their material terms and expiration dates),

specific customer ordering histories, new product development, and internal quality

control actions (including but not limited to ABMC's processes, complaint history, etc.).

11. Throughout the years, ABMC has developed working relationships with a number of

municipalities and private entities. Bailey was a participant in creating such relationships

with a number of these municipalities and private entities.

12. As a result of participating in creating and servicing those relationships, Bailey became

aware of how ABMC does business, how it effectively services its customers, and how it

maintains its market share.

13. In December, 2016, ABMC terminated its formal relationship with Bailey.

14. Upon information and belief, Defendant Premier Biotech Labs, LLC (hereinafter

"Premier") is a Domestic Business Corporation with its principal place of business in the

state of Minnesota and is owned by Defendant Bailey, a copy of such record is appended

hereto as Exhibit B.

15. Upon information and belief, Defendant Premier Biotech, Inc. (hereinafter "Premier

Biotech") is a Domestic Limited Liability Company with its principal place of business in

the State of Minnesota and is owned by Defendant April Bailey, a copy of which is appended hereto as Exhibit C.

16. Within the last two or three months, it has become obvious that Bailey has begun to poach ABMC's customers.

17. Bailey and his business, Premier, directly compete with ABMC and is taking great efforts to poach ABMC's customers.

18. The State of Michigan Department of Corrections (hereinafter "Michigan DOC") is a longstanding direct customer of ABMC and has been a customer for approximately fourteen (14) years. Bailey was the sales representative on the contract with Michigan DOC and ABMC obtained the contract when Bailey was an employee of ABMC.

19. Their annual sales for 2016 totaled approximately $869,000.00. In 2015, the annual sales totaled approximately $816,000.00 and in 2014, the total approximated $857,000.00.

20. Although content with the products and services being provided by ABMC, after many years of continuing the contractual relationship, Michigan DOC informed ABMC that it

must put their requirements for drug test kits out for competitive bidding or move to a state use program.

21. As a result of this communication, ABMC (still using Bailey as its sales representative only now on a 1099 consultant basis) began to take efforts in late 2012 to transition the Michigan DOC to a state use program using an intermediary third party Community Resource Organization (CRO).

22. ABMC identified an organization to utilize for this purpose; Peckham Vocational Industries (hereinafter "Peckham"), which is located in Michigan and which provides services for the disabled. The disabled would package ABMC's products and supply them to Michigan DOC.

23. Throughout the following four (4) years, ABMC worked with Peckham to take the actions necessary to transition the contract to state use. Part of these actions involved ABMC "giving" Peckham the experience they needed to prove to Michigan DOC that state use was appropriate for the contract. Another action involved ABMC addressing legal challenges questioning the use of the state use program.

24. Throughout these four (4) years, these actions involved tremendous efforts, both financial and personnel related, especially given the size of ABMC.

25. ABMC had knowledge that Michigan DOC would be issuing a Request for Proposal ("RFP") soon given its current Michigan DOC contract expiration. To that end, on January 4, 2017, ABMC (through its current Vice President of Sales & Marketing) contacted Peckham to discuss the approach to the upcoming RFP. A meeting was scheduled for later in January.

26. Michigan DOC issued the RFP on February 3, 2017, and a response is required by March 3, 2017.

27. Because ABMC has had the benefit of working with Michigan DOC for the past fourteen (14) years, ABMC is well versed with the needs and expectations of Michigan DOC. ABMC is also well informed and prepared to provide the type of product Michigan DOC needs for the type of clientele they serve.

28. From a bidding perspective, a priority will be given to CROs in the State of Michigan. Michigan DOC values entities such as ABMC who make a commitment to

their disabled population. As previously noted, a significant amount of time and energy is

afforded to locate and involve a CRO.

29. On February 10, 2017, (a week after the RFP was issued and three (2) weeks prior to the

RFP's response deadline), Peckham informed ABMC that they were going to respond to

the RFP with Premier (i.e. Bailey) regardless of the fact that the only reason the contract

was approved for state use was due largely in part to ABMC's effort, and that Premier

had no previous involvement in the process whatsoever.

30. This late notice on the part of Peckham effectively prevents ABMC from responding to

the RFP for the Michigan DOC business with a CRO and puts ABMC at a severe

disadvantage in responding to the RFP.

31. In addition, Bailey's knowledge of confidential pricing information gives Bailey and all

of his entities that are known to belong to him and Peckham an unfair competitive

advantage over ABMC.

32. Throughout his time at ABMC, as an employee and as a 1099 consultant, Bailey was

privy to confidential information relating to ABMC's product relationships with its

customers. Bailey was heavily involved in the sales aspect of ABMC's product. Bailey

communicated with various individuals, including working closely with Peckham's

representative, about the product through email, copies of which are appended hereto as

Exhibit D.

33. It is also evident that Bailey is well versed in ABMC's pricing scheme since there are

email exchanges between Bailey (on ABMC's behalf) and Michigan DOC's procurement

office with an attachment showing the exact break down of the pricing of a new product

ABMC was proposing to Michigan DOC, a copy of which is appended hereto as Exhibit

E.

34. Bailey's agreement with ABMC clearly states that once leaving employment, and after

any termination from employment, he would not be able to take ABMC's confidential

information, including but not limited to, ABMC's product-pricing, and customer

information, and use it for his own benefit, a copy of which is attached hereto as Exhibit

A.

35. It has now become clear that Bailey is using the information he obtained over the years by working for ABMC to take actions to steal Michigan DOC as a client of ABMC.

36. Bailey's newly formed relationship with Peckham now puts ABMC at a severe disadvantage to submit a bid with Peckham to Michigan Department of Corrections and failing to issue a preliminary injunction, permanent injunction, and a temporary restraining order would cause severe hardship to ABMC.

37. According to the terms in Bailey's agreement with ABMC, Bailey has breached the terms of the agreement and is acting maliciously to take one of ABMC's biggest customers, Michigan DOC, as well as ABMC's other customers.

38. It is apparent that Bailey is using the information he obtained while working for ABMC to take other customers away from ABMC and provide similar testing kits to those customers through his own business, Premier and all other entities, which he owns.

39. As a result, ABMC would suffer immediate and irreparable harm from significant loss of profits if Bailey is successful in taking away Michigan DOC, one of ABMC's largest customer, as well as other customers.

40. To this extent, Bailey's actions negatively impact the success of ABMC and its profits

immensely.

41. Therefore, ABMC should be entitled to a preliminary injunction, permanent injunction,

and temporary restraining order stopping Bailey's actions that are significantly affecting

ABMC as a corporation and its profits.

Dated: February 24, 2017

Melissa A. Waterhouse
Chief Executive Officer

Sworn to before me this 24th
day of February, 2017

Notary Public
DEBORAH A. BERLIN
Notary Public, State of New York
No. 01BE6036756
Qualified in Columbia County
Commission Expires February 7, 20 18

STATE OF NEW YORK
SUPREME COURT                                    COUNTY OF COLUMBIA

---

AMERICAN BIO MEDICA CORPORATION,

                                                 **AFFIRMATION OF**
                              Plaintiff,         **ATTORNEY**

        -against-                                Index No.:

TODD BAILEY, APRIL BAILEY,
PREMIER BIOTECH, INC., PREMIER BIOTECH LABS, LLC, and
PECKHAM VOCATIONAL INDUSTRIES, INC.,

                              Defendants.

---

WILLIAM J. BETTER, ESQ., being an attorney duly licensed to practice law before the Courts
of the State of New York, hereby states under penalties of perjury as follows:

1. I am the attorney for the plaintiff, American Bio Medica Corporation, in the above-

   referenced matter.

2. I make this affirmation in support of the Order to Show Cause brought pursuant to

   Section 6311 and 6301 of the New York Civil Practice Law and Rules (CPLR) seeking a

   preliminary injunction and temporary restraining order to prevent defendant Todd Bailey

   (hereinafter "Bailey")—in his own right, by and through defendants Premier Biotech,

   Inc., Premier Biotech Labs, LLC, or by and through any other intermediary—(1) from

   responding to a Request for Proposal issued by the Michigan Department of Corrections

   on February 3, 2017, (2) from participating in, informing, or agreeing to provide goods or

   services with regard to any entity's response to the same, (3) from in any manner

   soliciting the business or services of customers, employees, distributors, sub-distributors,

or consultants of the plaintiff corporation during the term provided in the Employee Compliance Certification signed by defendant Bailey on September 20, 2004, (see Exhibit A), and (4) from in any manner exploiting, disseminating, or appropriating confidential or proprietary information, including trade secrets, learned during defendant Bailey's employment with the plaintiff corporation.

3. I make all statements and allegations herein contained upon information and belief.

4. The sources of such information and belief are my conversations with the officers of the plaintiff corporation and my review of the books and records of the plaintiff corporation.

5. I hereby incorporate by reference the accompanying Summons and Verified Complaint and Affidavit of Melissa Waterhouse.

6. The plaintiff corporation has filed a Summons and Complaint naming Bailey, April Bailey, Premier Biotech, Inc. (hereinafter "Premier"; see Exhibit B), Premier Biotech Labs, LLC (hereinafter "Premier Labs"; see Exhibit C), and Peckham Vocational Industries, Inc. (hereinafter "Peckham" as defendants, and alleging, among other causes of action, breach of contract and misappropriation of trade secrets on the part of the defendants, defendant Bailey being a former employee of the plaintiff corporation.

7. Section 6301 of the CPLR allows that a Court may grant a preliminary injunction "where the plaintiff has demanded and would be entitled to a judgment restraining the defendant from the commission or continuance of an act, which, if committed or continued during the pendency of the action, would produce injury to the plaintiff."

8. In the instant claim, the plaintiff corporation seeks to enjoin defendant Bailey from competing with American Bio Medica Corporation during the term provided in defendant

Bailey's Employee Compliance Certification (See <u>Exhibit A</u>), and to permanently enjoin defendant Bailey from appropriating the trade secrets of the plaintiff corporation. Defendants' continued competition with the plaintiff corporation during the pendency of this action is likely to result in the departure of the plaintiff corporation's clients to the defendants, causing the plaintiff corporation to lose profits and business expectancies.

9. A party seeking a preliminary injunction must demonstrate "(1) a likelihood of ultimate success on the merits; (2) the prospect of irreparable injury if the provisional relief is withheld; and (3) a balance of equities tipping in the moving party's favor[.]" *Doe v. Axelrod*, 73 N.Y.2d 748 (1988). *See also Nobu Next Door, LLC v. Fine Arts Housing, Inc.*, 4 N.Y.3d 839 (2005).

10. The plaintiff corporation is ultimately likely to be successful on the merits. An employer has a legitimate business interest in protecting against an employee's competitive use of business relationships which the employee has gained through his or her employment. *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 392 (1999). A covenant not to compete that protects such an interest will be enforceable, provided that it is reasonable in time and area, and that it is neither harmful to the public nor unreasonably burdensome to the employee, *Reed, Roberts Associates, Inc. v. Strauman*, 40 N.Y.2d 303, 307 (1976), and even where such covenants are overbroad, courts have elected to enforce such provisions as are reasonable, *BDO Seidman, supra*, at 394-395. Further, even in the absence of a specific covenant, the use of confidential business information relating to pricing and costs by a former employee in competition with a former employer has been found to constitute unfair competition as misappropriation of the employer's trade secrets. *Laro*

*Maintenance Corp. v. Culkin*, 267 A.D.2d 431 (2d Dep't 1999) Here, the weight of the evidence demonstrates that the defendants have used the business relationships developed by defendant Bailey during his tenure at American Bio Medica Corporation, as well as confidential customer and pricing information made known to defendant Bailey in the course of his employment at American Bio Medica Corporation, to compete with the plaintiff corporation in violation of defendant Bailey's employment contract and applicable law.

11. The plaintiff corporation will suffer irreparable injury if the preliminary injunction is not granted. If no preliminary injunction is granted, the plaintiff corporation faces the potential loss of its second-largest customer, the Michigan Department of Corrections. The Michigan Department of Corrections has solicited bids, due March 3, 2017, for the services the plaintiff corporation provides. Defendants have capitalized upon the business relationship formed between defendant Bailey and defendant Peckham Vocational Industries, Inc., a Community Resource Organization, in the course of defendant Bailey's employment at American Bio Medica Corporation, in order to create a competitive advantage for defendants Premier Biotech, Inc. and Premier Biotech Labs, LLC, in the bidding for the Michigan Department of Corrections Contract, as described in the Affidavit of Melissa Waterhouse. Further, defendant Bailey's knowledge of the plaintiff corporation's pricing structures and profit margin calculations puts defendants a position to purposefully undercut the plaintiff corporation's bid. The plaintiff corporation is in a position to potentially lose many other customers through similar actions by the defendants.

12. The balance of equities favors the plaintiff corporation in the requested preliminary injunction. The plaintiff corporation undertook significant efforts over the course of many years to develop the various customer accounts, relationships, and pricing structures that make up the plaintiff corporation's business, and significant operational costs—including salary paid to defendant Bailey—were incurred in the development of the same. To permit the defendants to use those accounts, relationships, and pricing structures to compete with the plaintiff corporation, without the burden of the time and resources required to develop the same, and despite a contractual obligation to refrain from such competition, would frustrate traditional notions of fair play and substantial justice.

13. Section 6301 of the CPLR further provides that "[a] temporary restraining order may be granted pending a hearing for a preliminary injunction where it appears that immediate and irreparable injury, loss or damage will result unless the defendant is restrained before the hearing can be had."

14. In the instant claim, as described above, the defendants are in a position, through a business relationship established by defendant Bailey through his employment with American Bio Medica Corporation, and using confidential pricing structures learned by Bailey in the course of his employment with American Bio Medica Corporation, to submit a competing bid for a contract with the plaintiff corporation's second-largest customer undercutting the bid of the plaintiff corporation. Such bids must be submitted by March 3, 2017, likely before the court will have an opportunity to rule on the requested preliminary injunction. Further, upon learning of the plaintiff corporation's request for a preliminary injunction, absent a temporary restraining order, the defendants

will have the opportunity to submit a competing bid before the court is able to rule, even if a ruling can be obtained before that date.

15. The Uniform Rules for the Supreme Court and the County Court provide that "[i]n the absence of a showing of significant prejudice, the affirmation must demonstrate that a good faith effort has been made to notify the party against whom the temporary restraining order is sought of the time, date and place that the application will be made in a manner sufficient to permit the party an opportunity to appear in response to the application."

16. In an email dated February 27, 2017, my office informed defendants Bailey, April Bailey, and Peckham—and by extension, defendants Premier and Premier Labs—of the instant request for a preliminary injunction and temporary restraining order, and attached to said email copies of the Summons and Verified Complaint, the Affidavit of Melissa Waterhouse, this Affirmation of William J. Better, Esq., and the Order to Show Cause, which indicates the time, date, and place that the order will be made.

WHEREFORE, the affirmant respectfully requests that a preliminary injunction and temporary restraining order, pursuant to Section 6301 of the CPLR be granted.

Dated: February 24, 2017

William J. Better
Attorney for the Plaintiff
1 Albany Avenue
Kinderhook, NY 12106

EXHIBIT A



## EMPLOYEE COMPLIANCE CERTIFICATION

In consideration of, and as a condition of my employment with AMERICAN BIO MEDICA CORPORATION, hereinafter "ABMC", I hereby represent to, and agree with, ABMC as follows:

1.      Proprietary Information; Confidentiality. I understand that my employment by ABMC creates a relationship of confidence and trust with respect to any information of confidential or secret nature that may be disclosed to me by ABMC that relates to the business or products of ABMC or any of its parents, subsidiaries, affiliates, customers or suppliers, or any other party whom ABMC agrees to hold information of such party in confidence ("Information"). I understand that the Information has independent economic value to ABMC and I acknowledge that ABMC has taken steps to preserve and safeguard the secrecy of the Information and the Information is not generally known to the public or to others in ABMC's industry, and has entailed the expenditure of substantial costs and effort on ABMC's behalf over a long period of time.

As an Employee I shall make all reasonable efforts to maintain the Information as confidential and secret information of ABMC. I hereby agree that I will only disclose the Information to: ABMC, its employees, or agents whom it shall be reasonably necessary to disclose the Information in order to further conduct the business of ABMC, to my legal counsel in connection with such counsel's representation, or as otherwise may be required by law.

I agree that all right, title and interest in and to the Information shall remain the exclusive property of ABMC and that I will not be granted any interest or license of any right respecting the Information other than that may be expressly set forth herein. I agree that any ideas, processes, designs, procedures, or methods related to ABMC's business, manufacturing, operating systems or product technology, developed by me while an employee of ABMC is considered "works for hire" and such "works for hire" shall become and remain the sole property of ABMC. I further agree that I will not file any application for intellectual property rights related to the Information or "works for hire" without the express written consent of ABMC. I will not use the Information for any purpose other than to perform my duties as an Employee of ABMC.

Such Proprietary Information shall include but is not limited to: ABMC's internal operating systems and procedures, ABMC's current and future business plans and strategies, (including but not limited to analytical methods and procedures, financial information, forecasts and forecast assumptions), marketing strategies or information, knowledge concerning ABMC's customers and their specialized requirements (including but not limited to any customer lists or databases pertaining to existing customers, information related to past or prospective customers, data about the terms, conditions and expiration dates of existing relationships or contracts with customers, the type, quality and specifications of products purchased by such customers), any technical data; new or existing product or service concepts or ideas, know-how (trade secrets), any and all information related to ABMC's research and development activities, manufacturing, products, inventions, formulas, processes, designs, drawings and service and operation manuals and documentation.

*1*

Proprietary Information shall mean all notes, memoranda, files, records, writing or other documents which Employee has, in the past, or shall after the full execution of this Agreement, prepare, use or come into contact with during his/her employment with ABMC, which relate to any of the above or are useful in any manner to the business of ABMC. Proprietary Information shall also include any and all information and materials in ABMC's possession or under ABMC's control for any other person or entity which ABMC is obligated to treat as confidential or proprietary, and any and all information not generally known to the public or within industries or trades in which ABMC competes. The definition of Proprietary Information applies, to all communications, including written, electronic and oral, and without regard, to whether any specific matters would be deemed confidential, material or important or whether any specific matters would be deemed, patentable or copyrightable.

The obligations noted above shall not apply to: Information that immediately prior to or at the time of disclosure is, or thereafter becomes, available to the general public, Information that has been lawfully obtained by me from an independent third party without breach of the obligations noted above as shown by sufficient documentation that establishes the third party as the source of the Information and that the third party has not obtained the Information from ABMC, or Information that I can establish, by documented and competent evidence, was in my possession prior to my employment with ABMC.

My obligations related to the Information shall remain in effect until such time that the Information is no longer confidential or secret and is known to the general public, and my obligations related to the Information survives any termination or resignation of my employment with ABMC.

I understand that in the case of a breach or threatened breach of my obligations under this Section 1 by me, ABMC may suffer irreparable harm and will therefore be entitled to seek and be granted injunctive relief to enforce my obligations under this Section 1.

2. Non-solicitation. During and for a period of one (1) year after my termination or resignation from employment with ABMC, I will not directly or indirectly solicit suppliers, customers, employees, distributors, sub-distributors or consultants of ABMC for my benefit or for the benefit of any other party.

3. Employee Handbook. The ABMC Employee Handbook (the "Handbook") describes important information about ABMC and my relationship with ABMC as my Employer that is not included specifically in this Certification. I hereby acknowledge that I have received the Handbook and I am aware that it is my responsibility to read it thoroughly and comply with the policies contained in the Handbook. I understand that the policies, benefits and information contained in the Handbook are subject to change and that revisions to the Handbook may be made. Any such changes will be communicated through official notices and I acknowledge that any such revisions may supercede, modify or eliminate existing policies. Only the Chief Executive Officer, Chief Financial Officer or a majority of the Board of Directors has the ability to adopt any revisions to the policies contained in the Handbook and any revisions made to it.

4. Employment Status. I have entered into my employment relationship with ABMC voluntarily and acknowledge that there is no specified length of employment. Accordingly, either ABMC or I can terminate the relationship at will, with or without cause, at any time, so long as there are no violations of applicable federal or state law.

Furthermore, neither my signature on this Certification, nor the Employee Handbook constitutes a contract of employment with ABMC or obligates ABMC to employ me for any stated period of time.

5.     Governing Law; Severability. This Certification shall be governed and interpreted in accordance with the laws of the State of New York, without regard to the application or principles of choice of law. In the event that any provision of this Certification is found by a court, arbitrator or other tribunal to be illegal, invalid or unenforceable, then such provision will not be voided, but will enforced to the maximum extent permissible under applicable law, and the remainder of this Certification will remain in full force and in effect.

6.     Contacts. Should I have any questions or concerns related to this Certification or its contents, I shall contact the following persons at ABMC's Corporate Office in Kinderhook, NY:

    For Sections 1, 2, & 5:

        Melissa A. Decker
        Corporate Secretary
        Corporate Compliance Administrator
        Phone: 800-227-1243, Extension 107
        Email: mdecker@abmc.com

    For Sections 3 & 4:

        Therese R. Drobner
        Human Resources
        Phone: 800-227-1243, Extension 103
        Email: tdrobner@abmc.com

By signing and dating below, I hereby agree to comply with the terms of this Certification:

**AMERICAN BIO MEDICA CORPORATION:**     **EMPLOYEE:**

_Keith E. Palmer_             _Todd Bailey_
Print Name                          Print Name

_Keith Palmer_               _Todd Bailey_
Sign here                            Sign here

_10/1/04_                   _7/20/04_
Date                               Date

## Business Record Details »

Minnesota Business Name
## Premier Biotech Labs, LLC

Business Type
  Limited Liability Company (Domestic)

MN Statute
  322B

File Number
  679661900021

Home Jurisdiction
  Minnesota

Filing Date
  6/29/2013

Status
  Active / In Good Standing

Renewal Due Date
  12/31/2016

Registered Office Address
  6630 Lakeway Drive
  Chanhassen, MN 55317
  USA

Registered Agent(s)
  (Optional) None provided

Manager
  Todd Bailey
  7516 80th St S Suite 220
  Cottage Grove, MN 55016
  USA

Principal Executive Office Address
  7516 80th St S Suite 220
  Cottage Grove, MN 55016
  USA

Filing History

# Filing History

**Select the item(s) you would like to order:**   Order Selected Copies

| Filing Date | Filing | Effective Date |
| --- | --- | --- |
| 6/29/2013 | Original Filing – Limited Liability Company (Domestic) (Business Name: Premier Biotech Labs, LLC) | |

EXHIBIT C

## Business Record Details »

Minnesota Business Name
### PREMIER BIOTECH, INC

| | |
|---|---|
| **Business Type** | **MN Statute** |
| Business Corporation (Domestic) | 302A |
| | |
| **File Number** | **Home Jurisdiction** |
| 3493807-2 | Minnesota |
| | |
| **Filing Date** | **Status** |
| 09/14/2009 | Active / In Good Standing |
| | |
| **Renewal Due Date** | **Registered Office Address** |
| 12/31/2017 | 6630 Lakeway Drv |
| | Chanhassen, MN 55317 |
| | USA |
| | |
| **Number of Shares** | **Registered Agent(s)** |
| 10,000 | (Optional) None provided |
| | |
| **Chief Executive Officer** | **Principal Executive Office Address** |
| April Bailey | 6630 Lakeway Drv |
| 6630 Lakeway Drv | Chanhassen, MN 55317 |
| Chanhassen, MN 55317 | USA |
| USA | |

Filing History

# Filing History

Select the item(s) you would like to order:   Order Selected Copies

| Filing Date | Filing | Effective Date |
|---|---|---|
| 09/14/2009 | Original Filing - Business Corporation (Domestic) (Business Name: PREMIER BIOTECH, INC) | |
| 2/25/2013 | Administrative Dissolution - Business Corporation (Domestic) | |

| | |
|---|---|
| From: | Todd Bailey |
| Sent: | Monday, December 10, 2012 6:49 PM |
| To: | Doug Casterlin; Stan Cipkowski; Duncan Urquhart; Melissa Waterhouse |
| Cc: | Whitney Cipkowski |
| Subject: | RE: MI DOC cost savings analysis |

I will put the order in with Whitney tomorrow.    State of MI pays us.


-----Original Message-----
From: Doug Casterlin
Sent: Mon 12/10/2012 17:47
To: Todd Bailey; Stan Cipkowski; Duncan Urquhart; Melissa Waterhouse
Cc: Whitney Cipkowski
Subject: RE: MI DOC cost savings analysis

What sku?  there is more than one 3 panel RDS card.

Also, please place an order in the system....who is paying for these?


-----Original Message-----
From: Todd Bailey
Sent: Mon 12/10/2012 5:23 PM
To: Doug Casterlin; Stan Cipkowski; Duncan Urquhart; Melissa Waterhouse
Cc: Whitney Cipkowski
Subject: RE: MI DOC cost savings analysis

Hi Doug,
We would like to send the 3 panel RDS cards, sent with cups and bags.  Otherwise we can do Incup.

Todd

-----Original Message-----
From: Doug Casterlin
Sent: Monday, December 10, 2012 2:11 PM
To: Todd Bailey; Stan Cipkowski; Duncan Urquhart; Melissa Waterhouse
Subject: RE: MI DOC cost savings analysis

What sku?

Todd Bailey <tbailey@abmc.com> wrote:

Thanks for the detail on this Doug.  Even though we might not realize any saving, I want to explore this option to avoid a bid.  I would relly like to get out 5,000 units to MI next week.  Melissa and I spoke, there is no contract needed at this point. This is just a necessary step to seeing if it is possible to be "set aside".

Thank you,

Todd Bailey
Vice President of Sales and Marketing
American Bio Medica Corporation
Direct 952-949-0729
tbailey@abmc.com <blocked::mailto:tbailey@abmc.com>

---

From: Doug Casterlin
Sent: Wednesday, November 28, 2012 12:25 PM
To: Todd Bailey; Stan Cipkowski; Duncan Urquhart; Melissa Waterhouse
Subject: RE: MI DOC cost savings analysis

Todd,

Here are answers to some specific questions in your email.

For those who do not want to read all the detail below the conclusion is that there is no cost savings for ABMC sending bulk product in gaylords to Peckham.....

I am using the three highest volume skus sold to Michigan DOC as models...2 of the skus are bulk RDS cards (3OS and 4MS) packed 50 per small box and the 3rd is an RDS kit (3O3) packed 25 per standard die cut box.

Bulk RDS cards: Cost of box is $.31. Cost of box per test is ($.31/50 tests per box) $.0062 Cost of master carton to pack above product is $2.25. Cost of box per test ($2.25/1500 tests per master carton) is $.0015 Cost of package insert is $.11. There is 1 PI per box of 50 tests so the cost of the PI per test is ($.11/50) $.0022

If ABMC does not supply the above items to Peckham the cost savings per test is $.0099 (.0062+.0015+.0022) or $.01 per test.

The added cost of shipping 1 gaylord packed with 5000 bulk RDS tests to Peckham in Lansing is $165 per pallet or $.033 per test.

From the above info we see shipping bulk RDS cards to Peckham actually results in an increased cost to ABMC of $.023 per test.

For those current Michigan DOC orders over 30 cases ABMC pays shipping. The cost of 1 master carton containing 1500 bulk RDS cards to ship to Lansing via UPS is $31.77 or $.02118 per test.    ABMC would avoid this cost if it was working with Peckham.

So ABMC decreased shipping cost of $.02118 per test curently is offset by the increased cost of $.023 as shown above. This results in a net zero savings to ABMC when supplying bulk RDS cards to Peckham

RDS Kits:   Cost of die cut box is $.73.  Cost of box per test is ($.73/25 kits per box) $.0292
Cost of master carton to pack above product is $2.25.  Cost of box per kit ($2.25/250 kits per master carton) is $.009
Cost of package insert is $.11.  There is 1 package insert per box of 25 tests so the cost of the PI per test ($.11/25) is $.0044

If ABMC does not supply the above items to Peckham the cost savings per RDS kit is $.0426

2

# Melissa Waterhouse

| | |
|---|---|
| **From:** | Melissa Waterhouse |
| **Sent:** | Thursday, January 10, 2013 12:00 PM |
| **To:** | 'mstover@peckham.org' |
| **Cc:** | Todd Bailey; Whitney Cipkowski |
| **Subject:** | ABMC - Final Work Instructions, training, orders, etc |
| **Sensitivity:** | Confidential |
| **Attachments:** | PECKHAM Work Instructions 1-10-13 FINAL.pdf |

Hi Mike,

It was a pleasure speaking with you today. As discussed, attached are the final work instructions that can be used for training purposes. I understand that you will be conducting training this afternoon and that packaging activities will begin tomorrow.

Also as discussed, your Account Specialist will be Whitney Cipkowski and I have copied her on this email. She will be forwarding you the following later today:

ABMC form of Picking Sheet to be included with each MI DOC order
Order information for current orders that will need to be shipped asap (I understand from Whitney that there are multiple orders with varying locations).

Once you have conducted your training session, please send an electronic copy of the completed training form for our records. I will be getting our QA Specialist (Kathie Callan) up to date on the status of this relationship and you will most likely receive additional communications from her on quality/process related issues.

Thank you,

Melissa
**Melissa A. Waterhouse**
**EVP, Regulatory Affairs & Chief Compliance Officer**
**Corporate Secretary**
**American Bio Medica Corporation**
122 Smith Road
Kinderhook, New York 12106
Tel: 800-227-1243 or 518-758-8158, Ext 107
Fax: 518-758-8171
Check us out on the web at www.abmc.com

*This communication may contain information that is privileged and confidential. If you are not the intended recipient of this communication, please inform the sender by responding immediately and delete this communication from your system. Any unauthorized copying or dissemination of this communication is strictly prohibited.*

# PECKHAM Work Instructions for Pilot Program

**(1)    American Bio Medica Corporation (ABMC) will ship to Peckham:**

    a.   10,000 units of 10-3OS-000 in bulk
    b.   200 Product Instruction Booklets
    c.   200 RDS Result Guides
    d.   200 case boxes (to package the units into case of 50 units)
    e.   225 labels for the case boxes
    f.   225 lot number/expiration date labels to affix to (e)

**(2)    Order Entry:**

    a.   Michigan Department of Corrections (MI DOC) places an order with their dedicated Account Specialist (AS) (Whitney Cipkowski).
    b.   The AS will process the order in MAS 90 and enter the order into the "Work Book". A Picking Sheet will automatically be produced when the order is entered into MAS 90. Print this Picking Sheet and hold in the folder labeled "Peckham Open Orders"; it will be used later under Section 4.
    c.   The AS will send the order to Peckham via e-mail indicating the number of units to be packaged and shipped, the shipping address to send the product, the Sales Order # (to be included on Peckham's picking sheet), and the method of shipping.
    d.   Peckham will confirm the order receipt with the AS.
    e.   Peckham will print a picking sheet corresponding to the order received.

**(3)    Packaging/Shipping Instructions for Peckham:**

    a.   Remove all previous packaging materials, dirt and debris from the line.
    b.   Assemble case boxes by folding the corrugated box into its proper design and taping one end closed.
    c.   Obtain the pouched product to be packaged
    d.   Affix the box label on the case box.
    e.   Place lot number and expiration label on case box label.
    f.   Place the 50 pouches in each case box
    g.   As pouches are placed into the case boxes, inspect the pouches and labels for defects and debris.
    h.   Notify your Floor Supervisor, or in his absence the Business Development Coordinator of all defects observed, and they will notify ABMC Quality Assurance.
    i.   Place defective pouches and labels into a separate labeled container to be removed at the end of packaging.
    j.   Place one (1) Product Instructions booklet and one (1) RDS results guide in the case box. Note: One RDS results guide should be stapled to each Product Instructions.
    k.   After each case box is complete, weigh each box to verify that all components are present.
    l.   Record the weight of the complete box, including paperwork_____ lbs.
    m.   Repeat the steps above until the number of cases indicated on the order are boxed.
    n.   Tape boxes closed with clear tape.
    o.   Record the quantity of completed boxes and calculate the quantity of pouched product boxed.

Amount of Boxes Completed: _____ x __50____ = _____

                          Am't of Boxes              Am't pouches Boxed

p.   Transfer the boxes to the shipping department.

q.   The completed boxes of product will be packed for shipment, and a picking sheet will be placed on the shipping carton.

r.   Enter shipment information into UPS Quantum View specifying that a shipping confirmation email be sent to the AS at wcipkowski@abmc.com. and ship order to MI DOC location.

s.   The Sales Order # that corresponds with the shipment, the Lot # and Expiration Date of the product being shipped, and quantity shipped must ALL be specified in the Quantum View confirmation.

t.   If UPS Quantum View notification is unavailable, an email must be sent to the AS (to wcipkowski@abmc.com) that includes the tracking number for each specific order, the Sales Order #, the Lot # and Expiration Date of the product being shipped and the quantity shipped.

**(4)      Invoicing:**

a.   Upon receipt of the shipping confirmation via UPS Quantum View, the AS will take the ABMC Picking Sheet generated under Section 2b from the "Peckham Open Orders" folder and write the UPS shipping information on the picking sheet. The AS will invoice MI DOC in MAS 90 and mark the order as "shipped" in the Workbook.

b.   Either the AS or another member of the ABMC customer service team will email each invoice to a specified individual at MI DOC.

**STORAGE REQUIREMENTS:**

Product stored and maintained by Peckham will be individually pouched with a desiccant. Given this, only temperature must be monitored wherever the ABMC product is kept. The following specifications must be maintained:

Temperature Specification: 15 - 30°C or 59 - 86° F

Temperature readings must be taken at the same time each day and recorded on "Temperature Control Log" (ATTACHED AS ADDENDUM 1)

**TRAINING:**

Training documents are to be completed by Peckham.

Training is required to be documented on "TRAINING FORM Peckham Work Instructions (Pilot Program" (ATTACHED AS ADDENDUM 2)

American Bio Medica Corporation

## **ADDENDUM 1**

Temperature Control Log

| Temperature = 15° - 30° C (59° - 86° F) |
|---|

**Month:**

| DATE | TIME | TEMPERATURE |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |
| 29 | | |
| 30 | | |
| 31 | | |

Comments: _____

_____

_____

American Bio Medica Corporation

## ADDENDUM 2
## TRAINING FORM
### Peckham Work Instructions (Pilot Program)

Type of Training: On-The-Job

Trainer: _____ Date of Training: _____

Description of Training:
Peckham Work Instructions
Employee: _____

| Print Name | Signature | Date |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

Competency was demonstrated: Yes _____ No _____ N/A _____

Trainer Signature: _____ Date: _____

_____        _____

Return this form to ABMC Quality Assurance when completed.

American Bio Medica Corporation

The added cost of shipping 1 gaylord packed with 1000 RDS kits to Peckham in Lansing is $165 per pallet or $.165 per test

So shipping bulk RDS kits to Peckham actually results in an increased cost of $.1224 per kit

For those current Michigan DOC orders over 30 cases ABMC pays shipping. The cost of 1 master carton containing 250 RDS kits
to ship to Lansing via UPS is $31.77 or $.127 per test.   ABMC would avoid this cost if it was working with Peckham.

So ABMC decreased shipping cost of $.127 per test curently is offset by the increased cost of $ .1224 as shown above. This results in a net zero savings to ABMC when supplying RDS kits to Peckham

Doug

_____

From: Todd Bailey
Sent: Tuesday, November 27, 2012 9:12 AM
To: Stan Cipkowski; Doug Casterlin; Duncan Urquhart; Melissa Waterhouse
Subject: MI DOC

Hi Gang,
Our contract is MI is up in Oct. 2013. We have no more extentions left. We they must bid, OR we use a state use program to repack our goods.   We need to give Peckham (the State Use company) "experience" by Feb to get a committee to vote on this for approval. One the committee votes, DOC will agree or disagree. I was there in Oct and the DOC will agree as long as we are involved in the services to the field.

Questions and comments

*       Will we save money?
*       Est how much?
*       Can the State save a little?
*       Peckham will charge an estimated 10 cent per Incup or RDS.    This is on top of any extra expenses, boxes, Pls...
*       We need to ship it there, perferrable a container at a time, costs?
*       How much does our boxes costs, all of them?
*       How much is the PI, printed.

Summary of relationships


ABMC, Inc and Peckham


*       ABMC manufactures devices and pouch devices from ABMC manufacturing facility
*       Peckham receives bulk drug tests-packed in gaylords
*       Peckham acquires boxes for shipping
*       Peckham assembles boxes
*       Peckham packs boxes in various quantities

3

* Peckham prints package inserts, instructions, and chain of custody forms. Depending on State DOC, additional documents may be packaged into boxes with product
* Peckham accepts order from ABMC on behalf of the State, prints UPS label, ships product, and bills the State
* Peckham pays ABMC
* State pays Peckham


Manufacturing process with ABMC

* Strip manufacturing is automated with cards, sprayers, and cutters
* Strips are manually assembled into devices
* Devices are pouched through automated pouching device
* Product shipped in gaylords to Peckham


Services provided to State by ABMC

* Provide training throughout the State
* Accept orders from State
* Track sales throughout State offices and report back to the State
* Provide technical assistance when needed
* Continue education to State on drug testing and trends

**Melissa Waterhouse**

| | |
|---|---|
| **From:** | Melissa Waterhouse |
| **Sent:** | Tuesday, December 13, 2016 5:10 PM |
| **To:** | Todd Bailey |
| **Subject:** | Fwd: Please provide new pricing for the attached products |

**Attachments:** image001.gif; ATT47917843.htm; 12-13-16 Drug Tests Pricing.xls; ATT47917844.htm

I had a meeting in NJ today and just received this. I haven't even looked at it yet.

Thank you,

Melissa Waterhouse
Chief Executive Officer
American Bio Medica Corporation
800-227-1243, Extension 107
Check us out on the web at www.abmc.com

Begin forwarded message:

> **From:** "Samuel, Brandon (DTMB)" <SamuelB@michigan.gov>
> **Date:** December 13, 2016 at 4:03:41 PM EST
> **To:** "'mdwaterhouse@abmc.com'" <mdwaterhouse@abmc.com>
> **Subject: Please provide new pricing for the attached products**
>
> Hello Melissa,
>
> I tried to reach you earlier but I had to leave a message. MDOC is interested in incorporating the attached items in the change notice to extend the contract through 4/30/17. The attached spreadsheet captures the average price based on other vendor quotes. Based on pricing from other vendors, we would need pricing to come down from what ABM previously provided to be more in line with the average price numbers. I look forward to receiving new pricing from ABM.
>
> Thank you.
>
> *Brandon Samuel*
> Brandon Samuel
> Michigan Department of Technology, Management & Budget
> Procurement | Services Division
> Constitution Hall, 1st Floor. NE
> 525 West Allegan, Lansing MI 48909
> Phone (517) 284-7025
> Fax (517) 335-0046
> Email Samuelb@michigan.gov
>
> For current bids and new registration, please visit: www.buy4michigan.com
> For Buy4Michigan Customer Service, please call: 1-855-647-8724
> For vendor information, please visit: www.michigan.gov/micontractconnect
>
> **"Right decisions today determines tomorrows future success." B. Samuel**
> **"Never forget the past, just don't live in it." B. Samuel**

2/24/2017

**ABMC Pricing**

| PRODUCT | DRUGS INCLUDED | PRICE TO MI | Average Vendors Pricing | NEW PRICE TO MI |
|---|---|---|---|---|
| 4 panel dips | | | | |
| | OPI, OXY, FYL, BUP | $3.25 | $1.31 | |
| | COC, METH, OPI, OXY | $2.20 | $1.31 | |
| | AMP, METH, COC, OPI | $2.20 | $1.31 | |
| 5 panel dips | | | | |
| | OPI/OXY/FYL/BUP/THC | $3.50 | $1.53 | |
| | COC/METH/OPI/OXY/THC | $2.50 | $1.53 | |
| | AMP/METH/COC/OPI/THC | $2.50 | $1.53 | |
| 6 panel dips | | | | |
| | OPI, OXY, FYL, BUP, COC, METH | $3.75 | $1.79 | |
| 7 panel dip | | | | |
| | OPI/OXY/FYL/BUP/COC/METH/THC | $4.00 | $1.86 | |
| 8 panel dips | | | | |
| | OPI/OXY/FYL/BUP/COC/METH/AMP/THC | $4.25 | $2.24 | |
| Single Panel Dips | | | | |
| | THC | $1.00 | $0.68 | |
| | Benzodiazepines | $1.00 | $0.68 | |
| | Barbiturates | $1.00 | $0.68 | |
| | Methadone | $1.00 | $0.68 | |
| | Tramadol | $1.35 | $0.68 | |
| 8 panel in-cup | | $7.65 | $3.28 | |

| | |
|---|---|
| Notes: | All products include shipping costs-current products sometimes did and sometimes did not include shipping. Additional single panel dips available (including Fentanyl, |
| | ETG and K2). Product pricing does NOT include the cost of collection cups. |